783 F.2d 616
 121 L.R.R.M. (BNA) 2881, 54 USLW 2507,
104 Lab.Cas. P 11,796,
4 Fed.R.Serv.3d 229
 Raymond J. DONOVAN, Secretary of Labor, Plaintiff-Appellee,
v.
WESTSIDE LOCAL 174, INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, AFL-CIO, Defendant,
Norbie Przybylowicz, Proposed Intervenor/Defendant-Appellant.
 No. 84-1597.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 3, 1985.
Decided Feb. 11, 1986.
 
 Harvey I. Wax, argued, Southfield, Mich., for proposed intervenor/defendant-appellant.
 Joel M. Shere, U.S. Atty., Detroit, Mich., Dennis A. Paquette, Helene Boetticher, argued, U.S. Dept. of Labor, Washington, D.C., Margrit W. Vanderryn, for plaintiff-appellee.
 Before MARTIN and CONTIE, Circuit Judges; and PECK, Senior Circuit Judge.
 CONTIE, Circuit Judge.
 
 
 1
 Norbie Przybylowicz appeals from the judgment of the district court denying his motion to intervene in the Title IV, 29 U.S.C. Sec. 482, certification proceedings. For the reasons that follow, we reverse and remand this action to the district court for further proceedings consistent with this opinion.
 
 I.
 
 2
 On February 21, 1982, the Secretary of Labor (Secretary) filed suit against Westside Local 174, United Automobile, Aerospace and Agricultural Implement Workers of America (Union) pursuant to 29 U.S.C. Sec. 482(b)[1] of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), to set aside the June 1981 election for local officers.[2] After the trial had commenced, the parties reached a settlement whereby the Secretary would supervise the Union's 1984 election. The settlement terms provided that the district court would retain jurisdiction of the action until the results of the supervised election were certified to the court by the Secretary.[3]
 
 
 3
 Pursuant to the settlement agreement, the 1984 election of officers was conducted from February 26th to March 2nd, and was completed on March 15, 1984. The Union membership included numerous plant locations, and each plant was scheduled to vote on a designated day. On February 27th, a very bad snow storm began to develop,[4] and the chairman of the Union election committee along with the election supervisor appointed by the Secretary, decided to cancel and reschedule the February 28th poll times. This decision was overruled by the election supervisor's superior. The election took place as scheduled--with polls being open from 9:00 to 9:30 a.m. only. Almost one-third of those voters entitled to vote on that day did not make it to work and were not permitted to vote at a later time.[5] Norbie Przybylowicz, the incumbent President, lost the election.[6]
 
 
 4
 On March 26, 1984, Przybylowicz filed an election protest with the Secretary on two counts: (1) the decision to not postpone the February 28, 1984 election due to severe weather conditions was arbitrary and disenfranchised 254 voters at the plants in question;[7] and (2) the Secretary improperly counted thirty-two ballots which contained the name of a write-in candidate for Sergeant-At-Arms.[8] Przybylowicz alleged that these votes were counted in direct contravention to the Union's constitution[9] and past practice in interpreting that constitution and in contravention of the Union election committee ruling.
 
 
 5
 The Secretary investigated the protest, and on April 13, 1984 announced that the LMRDA had not been violated by the actions taken. The reasons given by the Secretary for not rescheduling the February 28, 1984 election were:
 
 
 6
 (1) the plants where the voting was scheduled to occur were to remain open, and employees were expected to report to work;
 
 
 7
 (2) postponement of an election due to weather conditions is contrary to accepted practices of the International; and
 
 
 8
 (3) adverse weather conditions are not a basis for cancelling public elections, upon which union elections are to be patterned.
 
 
 9
 The Secretary reasoned that the write-in ballots should not be set aside because the marks made on the ballots were not "identifying:"
 
 
 10
 An identifying mark is described as one which does not bear any relationship to the voter's intention with regard to candidates. Since "17" and "Roger Wilson" both bear a relationship to the voter's intention with regard to a candidate, the Election Committee did not violate the UAW guidelines when it did not void the ballots in their entirety. Moreover, the failure to void these ballots did not destroy the secrecy of the ballots. A ballot is not secret if it contains any markings which upon examination would enable one to identify it with the voter. Since several ballots were cast for "17", "Roger Wilson", or both, it would be impossible to identify a voter with a ballot.
 
 
 11
 The Secretary subsequently certified the election results to the district court pursuant to 29 U.S.C. Sec. 482(c).[10] Przybylowicz sought to intervene in the certification action. He attached supporting affidavits and memorandum to his motion to intervene which set forth with specificity the abuses committed by the Secretary in his running of the supervised election and their affect on the outcome of the election. In an opinion published May 16, 1984, the district court denied Przybylowicz's motion to intervene and found the election certification to be proper. The court also reasoned that even if Przybylowicz had been allowed to intervene to argue his points of contention, the court would still have certified the election because the Secretary's "statement of reasons" was rational. The court did not hold an evidentiary hearing as to the truth of Przybylowicz's allegations, concluding that it was beyond the court's scope of review.
 
 
 12
 On August 14, 1984, Przybylowicz filed the present appeal. Przybylowicz claims the district court erred in denying his motion to intervene, and further contends that the court applied the incorrect standard when reviewing the Secretary's certification.
 
 II.
 
 13
 Przybylowicz sought to intervene as of right in the certification action pursuant to Fed.R.Civ.P. 24(a) which provides:
 
 
 14
 Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 15
 Specifically, Przybylowicz attempted to intervene under Fed.R.Civ.P. 24(a)(2), under which an applicant will have the right to intervene if "he claims a sufficient interest in the proceedings, and ... that interest is not 'adequately represented by existing parties.' " Trbovich v. United Mine Workers, 404 U.S. 528, 538, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972) (footnote omitted).
 
 
 16
 Pryzbylowicz's right to intervene pursuant to Fed.R.Civ.P. 24(a)(2) in this certification action must be analyzed in light of congressional intent in formulating the LMRDA to determine whether "intervention would not frustrate the objectives of the statute." Brennan v. Silvergate District Lodge 50, International Ass'n of Machinists, 503 F.2d 800, 804 (9th Cir.1974), citing Trbovich, 404 U.S. at 536, 92 S.Ct. at 635.[11] In Trbovich, the Court analyzed congressional objectives behind regulating union elections:
 
 
 17
 Having conferred substantial power on labor organizations, Congress began to be concerned about the danger that union leaders would abuse that power, to the detriment of the rank-and-file members. Congress saw the principle of union democracy as one of the most important safeguards against such abuse, and accordingly included in the LMRDA a comprehensive scheme for the regulation of union elections.
 
 
 18
 404 U.S. at 530-31, 92 S.Ct. at 632. Title IV, which comprises the substantive rules governing union elections, includes regulations providing for democratic elections, 29 U.S.C. Sec. 481, and the method for challenging and enforcing those election procedures, 29 U.S.C. Sec. 482. See Usery v. Local Union No. 639, International Brotherhood of Teamsters, 543 F.2d 369, 374 (D.C.Cir.1976), cert. denied, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977).
 
 
 19
 While trying to achieve its goal to ensure democratic elections, congressional concern was focused on limited intervention into union activities:
 
 
 20
 The legislative history shows that Congress weighed how best to legislate against revealed abuses in union elections without departing needlessly from its long-standing policy against unnecessary governmental intrusion into internal union affairs. The extensive and vigorous debate over Title IV manifested a conflict over the extent to which governmental intervention in this most crucial aspect of internal union affairs was necessary or desirable.
 
 
 21
 Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 470-71, 88 S.Ct. 643, 647-48, 19 L.Ed.2d 705 (1968) (footnote omitted). This debate resulted in enforcement procedures which were:
 
 
 22
 [I]n harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts.
 
 
 23
 Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964). The Secretary of Labor was selected for this task due to the special knowledge and expertise enjoyed by him in regard to union activities. Id.
 
 
 24
 More specifically, the enforcement provisions of 29 U.S.C. Sec. 482 provide that a union member with respect to an election grievance, must first exhaust internal union remedies. If relief is not forthcoming, then the union member may file a complaint with the Secretary of Labor. The Secretary investigates the allegations and determines whether there is probable cause to believe that a Title IV violation has occurred and has not yet been remedied. The Secretary then has the discretion to determine whether this violation may have affected the outcome of the election, and if so, to bring suit in federal court to set aside the election. Once a suit is filed, the district court determines whether, based upon the preponderance of the evidence, the election is void. If the court so finds, then the court is " 'to direct the conduct of a new election under the supervision of the Secretary and, so far as lawful and practical,' in conformity with the union's constitution and bylaws." Local Union No. 639, 543 F.2d at 374, quoting 29 U.S.C. Sec. 482(c)(2). Thereafter, upon completion of the new election, the Secretary is directed to "promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization." 29 U.S.C. Sec. 482(c)(2).
 
 
 25
 The Court in Trbovich analyzed the enforcement procedures of Title IV as applied to post-election relief,[12] including intervention in these proceedings under Fed.R.Civ.P. 24(a)(2). The Court acknowledged that only the Secretary could bring a civil action to set aside an election, thereby utilizing his special expertise to screen complaints in order "to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and ... to centralize in a single proceeding such litigation as might be warranted with respect to a single election." Trbovich, 404 U.S. at 532, 92 S.Ct. at 633. The Court reasoned further that:
 
 
 26
 With respect to litigation by union members, then, the legislative history supports the conclusion that Congress intended to prevent members from pressing claims not thought meritorious by the Secretary, and from litigating in forums or at times different from those chosen by the Secretary. Only if intervention would frustrate either of those objectives can the statute fairly be read to prohibit intervention as well as initiation of suits by members.
 
 
 27
 Id. at 536, 92 S.Ct. at 635.
 
 
 28
 The Court held that the LMRDA did not prohibit intervention by union members in post-election proceedings where the "petitioner seeks only to present evidence and argument in support of the Secretary's complaint." Id. at 537, 92 S.Ct. at 635. Thereby, a union member was precluded from raising additional grounds for complaint, which satisfied the congressional objective of preventing frivolous or groundless litigation. By only interceding in the Secretary's action, the burden of multi-litigation was also avoided.
 
 
 29
 After determining that the LMRDA did not prohibit all intervention in post-election proceedings, the Court applied the Fed.R.Civ.P. 24(a)(2) standards of sufficient interest and adequate representation of those interests to the claims of the union members to determine whether intervention was appropriate. The issue of sufficient interest by the defeated union candidate was conceded by the Secretary in Trbovich but the Secretary contended that he adequately represented the interests of all individual union members. The Court initially responded by setting forth the two major interests to be protected by the Secretary which, although related, are not identical:
 
 
 30
 First, the statute gives the individual union members certain rights against their union, and "the Secretary of Labor in effect becomes the union member's lawyer" for purposes of enforcing those rights, 104 Cong.Rec. 10947 (remarks of Sen. Kennedy). And second, the Secretary has an obligation to protect the "vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member."
 
 
 31
 Trbovich, 404 U.S. at 538-39, 92 S.Ct. at 636, quoting, Local 153 Glass Bottle Blowers Ass'n, 389 U.S. at 475, 88 S.Ct. at 650. The Court concluded that a union member could have a valid complaint about the performance of "his lawyer," the Secretary, whose dual concerns as enumerated above might prevent adequate representation of the union member's individual rights as necessitated by the second prong of intervention under Rule 24(a)(2). Therefore, intervention was available to the union "member who initiated the entire enforcement proceeding." Id. 404 U.S. at 539, 92 S.Ct. at 636.
 
 
 32
 Applying intervention principles under Rule 24(a)(2) to a certification proceeding pursuant to 29 U.S.C. Sec. 482(c)(2) has not been addressed directly by the Supreme Court or by this circuit. However, the Court did state in Trbovich, that limiting intervention in post-election proceedings to those union members who align themselves with the Secretary would be inapplicable in the remedial stages[13] of the enforcement procedure. The Court reasoned that the "statute [29 U.S.C. Sec. 482(c)(2) ] requires the court to direct a new election in conformity with the constitution and bylaws of the union, and the requirements of Title IV." Id. at 537 n. 8, 92 S.Ct. at 636 n. 8 (emphasis added). The Court concluded that "[s]ince the court is not limited in this regard to consideration of remedies proposed by the Secretary, there is no reason to prevent intervenors from assisting the court in fashioning a suitable remedial order." Id. (citing Hodgson v. Local Union No. 6799, United Steelworkers of America, 403 U.S. 333, 344, 91 S.Ct. 1841, 1847, 29 L.Ed.2d 510 (White, J., dissenting)).
 
 
 33
 Therefore, the Supreme Court limited its holding in Trbovich to apply only to intervention in setting aside the initial election. These procedures were purposely left to the control and discretion of the Secretary in order to utilize his expertise to effectuate the compromise of ensuring fair democratic union elections with minimal union interference. However, once a court determines to follow the recommendations of the Secretary to set aside an election, then the court is obligated to ensure that certification is appropriate:
 
 
 34
 Once the remedial stage is reached, the intervenor acquires full party status, to reflect the shift in statutory focus. With the original election set aside, the Secretary's role is no longer one of applying his special expertise to vindicate a statutory policy in a manner which insulates unions from frivolous suits and undue governmental intervention. At this point, his primary responsibility is to aid the court in fulfilling its obligation to ensure that the supervised election is conducted in accordance with the law. And in this process, as in the earlier formulation of a suitable remedial order, there is no basis in the statutory scheme for curtailing the intervenor's assistance to the court.
 
 
 35
 Local Union No. 639, 543 F.2d at 377 (original emphasis). The two circuits which have permitted intervention in the certification procedure have determined that "[t]he federal court has subject matter jurisdiction over the accuracy of certification," Hodgson v. Carpenters Resilient Flooring Local Union 2212, 457 F.2d 1364, 1369 (3d Cir.1972); Local Union No. 639, 543 F.2d at 377, based on the statutory language of 29 U.S.C. Sec. 482(c).[14] Under this analysis, the emphasis in a supervised election shifts whereby the Secretary must certify to the district court that the election was properly conducted and that it was fair.
 
 
 36
 Further, the provision that a court's order "designating elected officials of a labor organization shall be appealable in the same manner as the final judgment in a civil action," 29 U.S.C. Sec. 482(d), connotes that the court is directed to do more than simply rubber stamp the Secretary's recommendations. Local Union No. 639, 543 F.2d at 376. The certifying court is obligated to determine that the supervised election was performed according to the dictates of Title IV and the constitution and bylaws of the union to ensure a fair election. Therefore, in order to perform its independent statutory function, which is appealable, the court should not be constrained to limit its inquiry to the Secretary's recommendations.
 
 
 37
 Finally, the practical effects of denying intervention by the aggrieved party defeated in the supervised election must be considered:
 
 
 38
 Certainly it is far more likely that a challenge to the Secretary's certification will be presented in an adversary context if the party who has lost the election and who thus alleges injury in fact is allowed to present that challenge....
 
 
 39
 Thus we reject as well the Secretary's next contention that intervention as a defendant should in all cases be denied because the defendant labor organization will always adequately represent the applicant's interest. Clearly in this case, and in others that we can envisage, that is not so. McFadden [the proposed intervenor] claims an interest in the office of Business Manager and in the outcome of the election. The judgment as a practical matter terminates his ability to protect that interest. The defendant Local is not representing his interests at all. Intervention pursuant to Rule 24(a) should have been permitted.
 
 
 40
 Carpenters Resilient Flooring, 457 F.2d at 1369.
 
 
 41
 At least two circuits have denied intervention in the certification procedure. Usery v. District No. 22, United Mine Workers, 567 F.2d 972 (10th Cir.1978); Brennan v. Silvergate District Lodge No. 50, International Ass'n of Machinists, 503 F.2d 800 (9th Cir.1974). These courts relied primarily upon the attendant delays that would result from such intervention in contravention to the congressional objective of minimizing internal union interference. These circuits equate intervention at the certification proceedings with intervention at the post-election stage. Any intervention permitted at the certification proceeding which would be unavailable in post-election relief proceedings, would be an impermissible expansion of Title IV. District No. 22, 567 F.2d at 974; Silvergate District Lodge 50, 503 F.2d at 806. These circuits, relying on the reasoning set forth in Trbovich, would require intervenors to limit their complaints to those determinations of Title IV violations by the Secretary. This precludes aggrieved union members from presenting claims not deemed meritorious by the Secretary. District No. 22, 567 F.2d at 974-75. The goal of LRMDA to ensure democratic union elections is thereby accomplished when the Secretary and the union agree as to the validity and accuracy of the new elections. Id. at 974.
 
 
 42
 We disagree with the reasoning of the circuits which deny intervention in any certification action. This logic creates a potential for inequitable results in many factual circumstances, including the situation presently before the court. As previously discussed, Title IV was conceived to prevent abuses imposed on union members by incumbent union officials who, in effect, controlled the union. The remedy was to provide union members a method to ensure democratic elections. In enacting Title IV, Congress limited the individual rights of union members by stipulating that the Secretary must determine whether to initiate a suit for post-election relief. The Secretary was designated due to his general expertise in this area which allowed him to proceed to a quick resolution of claimed union abuses, thereby minimizing governmental interference with internal union affairs.
 
 
 43
 In the present case, Przybylowicz does not seek to intervene in the certification proceedings because of claimed union abuses but instead he alleges abuses made by the Secretary in supervising the court-ordered election. Specifically, he claims that the Secretary failed to follow the union's constitution, bylaws and past procedures in counting write-in ballots. He also contends that the Secretary's decision to not postpone the February 28th election date due to inclimate weather was arbitrary and capricious. In both instances, he alleges that each action by the Secretary affected the outcome of the election. Przybylowicz exhausted all internal remedies available to him prior to his motion to intervene in the certification proceeding. In denying his claim and certifying the election, the district court did not conduct any evidentiary hearing to determine whether there was any factual basis to his contentions. The court deferred to the Secretary's determinations in both instances, thereby granting the Secretary the ability to effectively eliminate any review of his decisions. In essence, this determination by the district court provides the Secretary with total discretion to determine the merits of Przybylowicz's claimed abuses which were directed at the Secretary himself. This self-evaluation, which lacks effective judicial review, allows arbitrary and capricious decisions to be made by the Secretary which could result in the court certifying an unfair election. Further, the Union is the only other party to the proceedings, and its interests may not align with the individual union members' interests, particularly if those interests are represented by the newly elected leadership. See Carpenters Resilient Flooring, 457 F.2d at 1369.
 
 
 44
 This court is cognizant of the burdens which result from the attendant delays if intervention is allowed on a per se basis in all certification proceedings. However, this court is also aware of its obligation to ensure the accuracy and fairness of the supervised election as set forth under 29 U.S.C. Sec. 482(c) and (d). We therefore hold that intervention pursuant to Fed.R.Civ.P. 24(a)(2) is appropriate in certification proceedings under 29 U.S.C. Sec. 482(c)(2) when the intervenor is the defeated candidate for union office who satisfactorily alleges violations by the Secretary of Title IV or the union's constitution or bylaws in the conduct of the court ordered supervised election.
 
 
 45
 Procedurally, any proposed intervenor must sufficiently allege in his complaint and supporting affidavit prior to the certification proceeding in a timely manner the following: (1) that he was a candidate for union office who was defeated in a supervised election; (2) that he has exhausted all internal union remedies as well as having presented his complaint to the Secretary; (3) that abuses were committed by the Secretary in his supervision of the election pertaining to Title IV and/or the union's constitution and/or bylaws; and (4) that these abuses affected the election results. The Secretary and the union will also submit all materials relevant to their denial of intervention for the claimed abuses, and these findings should be given great deference by the court. The district court can then determine prior to the certification proceeding whether to permit intervention.
 
 
 46
 We believe that permitting intervention within the narrow confines of this holding is consistent with the analysis in Trbovich. First, we conclude that this holding will not frustrate congressional intent. It is obvious that multi-litigation is avoided by this holding since the intervenor is limited to bringing his suit in the attendant certification proceedings. As to the claim of groundless or frivolous litigation, the utilization of the enumerated procedural requirements for intervening will help minimize potential delays. Beyond these procedural devices, we consider the allegations of Secretarial abuse and the court's role to ensure a democratic election to be the determinative factors in creating a distinction between intervening in post-election actions and in certification actions. Therefore, our guidelines for intervention will promote the basic intent of Congress to ensure democratic and fair elections as constituted by Title IV and the union's constitutions and bylaws.
 
 
 47
 Since the statute does not prohibit this limited intervention, then the standards applicable to intervention under Fed.R.Civ.P. 24(a)(2) must be analyzed in the context of the certification proceeding. First, the interest of the defeated union member must be considered sufficient in light of the previous Trbovich decision. As to adequate representation of these interests, the need to permit intervention is even greater in these certification proceedings than in post-election relief, where it may be possible that neither the Secretary nor the union is representing the defeated union members' claim of Secretarial abuse. Therefore, intervention within the context of this holding is consistent with the standards of Fed.R.Civ.P. 24(a)(2) and should have been considered by the district court in connection with both of Przybylowicz's claims.[15]
 
 III.
 
 48
 The district court's order denying Przybylowicz's motion to intervene also entered judgment for the Secretary on his motion certifying the results of the supervised election. 29 U.S.C. Sec. 482(c) states in part that upon completion of the supervised election "[t]he Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be officers of the labor organization." Although the court's decision denying Przybylowicz's motion to intervene effectively precluded any challenge to the certification proceedings, the district court determined that even if "Przybylowicz were allowed to intervene, [the court] could nevertheless find that the Secretary properly certified the elections in this case." Having found that Przybylowicz should have been permitted to intervene in the certification proceedings, this court must now determine the proper scope of review of the Secretary's recommendations to certify the election results.
 
 
 49
 Without any Supreme Court or Sixth Circuit cases bearing directly on the issue of the proper scope of review for certification proceedings, the district court based its above holding on Dunlop v. Bachowski, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). Bachowski involved the scope of review for the Secretary's initial decision not to challenge an unsupervised election pursuant to 29 U.S.C. Sec. 482(b). The Court held that judicial review of the Secretary's determination not to bring suit was generally limited to the issue of whether the Secretary's "statement of reasons"[16] was arbitrary or capricious on its face. The Court stated:
 
 
 50
 The necessity that the reviewing court refrain from substitution of its judgment for that of the Secretary thus helps define the permissible scope of review. Except in what must be the rare case, the court's review should be confined to examination of the "reasons" statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious. Thus, review may not extend to cognizance or trial of a complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election. The full trappings of adversary trial-type hearings would be defiant of congressional objectives not to permit individuals to block or delay resolution of post-election disputes, but rather "to settle as quickly as practicable the cloud on the incumbents' titles to office"; and "to protect unions from frivolous litigation and unnecessary interference with their elections." "If ... the Court concludes ... there is a rational and defensible basis [stated in the reasons statement] for [the Secretary's] determination, then that should be an end of this matter, for it is not the function of the Court to determine whether or not the case should be brought or what its outcome would be.
 
 
 51
 Bachowski, 421 U.S. at 572-73, 95 S.Ct. at 1860, quoting DeVito v. Schultz, 72 L.R.R.M. 2682, 2683 (D.C.1969). The district court in this case concluded that it must limit its review of whether certification was proper by determining whether the Secretary's statement of reasons was arbitrary or capricious on its face.[17]
 
 
 52
 We disagree with the district court's reasoning that the scope of review set forth in Bachowski is applicable to certification proceedings. The factual circumstances in Bachowski concern an appeal by Bachowski, who was a defeated candidate for union office in an unsupervised election. After exhausting his internal union remedies, Bachowski filed a complaint with the Secretary pursuant to 29 U.S.C. Sec. 482(a). After the Secretary investigated and dismissed the complaint pursuant to 29 U.S.C. Sec. 482(b), Bachowski filed suit in the district court to have the Secretary's decision not to set aside the election declared arbitrary and capricious. The Supreme Court in holding that the proper scope of review was limited to the Secretary's statement of reasons, postulated a narrow scope of judicial review for unsupervised elections. The Court's holding was reasoned to be consonant with the congressional intent of limiting delay in union affairs by deferring to the Secretary's screening function of claimed union abuses. Bachowski, 404 U.S. at 572-73, 95 S.Ct. at 1860.
 
 
 53
 By comparison, the circumstances in this case concern a defeated incumbent candidate's allegations of noncompliance with Title IV and the Union's bylaws and constitution by the Secretary in running the supervised election. The important differences between these two cases are the stage of the proceedings in which each action occurs and the entity who is blamed for the failure to follow Title IV and/or the Union's bylaws and constitution. If we were to limit the scope of review for certification to a determination of whether the Secretary's statement of reasons was arbitrary or capricious, we would contravene the court's statutory function to ensure democratic elections under 29 U.S.C. Sec. 482(c), by potentially certifying improper election results. The possibility of improper results is especially true when the allegations are directed at the Secretary[18] and not the union.[19]
 
 
 54
 Therefore, we hold that the district court's scope of review for granting the Secretary's motion to certify is not limited to the Secretary's statement of reasons. Based on the court's obligation to ensure democratic elections, we hold that it is within the court's discretion to determine the appropriate scope of review in certification proceedings.
 
 
 55
 Accordingly, the district court's order is REVERSED and REMANDED for proceedings consistent with this opinion.
 
 
 
 [1]
 29 U.S.C. Sec. 482(b) reads:
 The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe....
 
 
 [2]
 The complainants for this suit were Jim Baker, Eric Gronda, and Gynese Williams. Norbie Przybylowicz was elected President in the disputed June 1981 election. Mr. Baker was subsequently elected President in the supervised March 1984 election. Norbie Przybylowicz attempted to intervene in the certification of the 1984 election which is the subject matter of this appeal
 
 
 [3]
 Paragraph 5 of the Stipulation of Settlement and Order executed by the parties and by the district judge on August 26, 1983, provides as follows:
 This Court shall retain jurisdiction of this action and after completion of the election, Plaintiff shall certify to this Court the names of the persons so elected, and that such election was conducted in accordance with Title IV of the Act and in accordance with the provisions of the Constitution and Bylaws of the Defendant and the Constitution and Bylaws of the United Automobile, Aerospace and Agricultural Implement Workers of America....
 
 
 [4]
 There were five inches of snow on the ground by 10:00 p.m. on the 27th
 
 
 [5]
 The Secretary reasoned that since the polls were opened on time and the plants were open no votes were affected. The one exception to this was one poll that was opened a few minutes late where only two voters were unable to vote as a direct result. Since all elected individuals won their positions by more than two votes, the Secretary reasoned that the snow did not affect the election
 
 
 [6]
 The final election count was 2,983 votes for Baker and 2,952 votes for Norbie Przybylowicz, making the final margin 31 votes
 
 
 [7]
 Przybylowicz alleged that he drew his support from the smaller facilities scheduled to vote on this day
 
 
 [8]
 Przybylowicz alleges that these write-in ballots should not be counted at all for any union election and that all these ballots designated Przybylowicz's opponent, Jim Baker
 
 
 [9]
 The constitution states:
 Section 22. The nomination of delegates to the Convention may occur at the meeting at which the Election Committee is elected or at a later date, but in either case at least seven (7) days' notice shall be given. After the deadline on accepting nominations has expired, no election of so-called "sticker" or "write-in" candidates shall be considered legal. A list of nominees shall be available to the membership. Candidates shall not serve on the Election Committee or as challengers or observers.
 Section 23. Delegates to the International Convention shall be elected by secret ballot of the Local Union of which they are members and in no case shall be appointed.
 
 
 [10]
 29 U.S.C. Sec. 482(c) reads:
 If, upon a preponderance of the evidence after a trial upon the merits, the court finds--
 (1) that an election has not been held within the time prescribed by section 481 of this title, or
 (2) that the violation of section 481 of this title may have affected the outcome of an election,
 the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization....
 
 
 [11]
 Silvergate District Lodge 50, 503 F.2d at 804, further states:
 The Federal Rules of Civil Procedure do not "abridge, enlarge or modify any substantive right," 28 U.S.C. Sec. 2072, nor do they enlarge the jurisdiction of the federal courts.... "Thus the basic question as to the substantive statutory right to intervene before ... a district court ... should primarily be one of statutory interpretation in light of intervention principles."
 (Citations omitted).
 
 
 [12]
 Post-election relief is the initial action taken when a union member complains about the circumstances of an unsupervised election, i.e., a union election run by the union itself prior to any government intervention
 
 
 [13]
 Remedial stages of the proceedings represent the steps taken to remedy abuses found in the original election after the court has determined to set aside that election
 
 
 [14]
 See footnote 10, supra
 
 
 [15]
 Przybylowicz's claim as to the arbitrariness of the Secretary in deciding to hold the elections despite inclimate weather should be considered in light of the recent case of V.I.P. Limousine, 274 N.L.R.B. No. 90, 118 L.R.R.M. 1399 (1985)
 
 
 [16]
 The "statement of reasons" is a procedural device required of the Secretary which gives reasons for his actions and the underlying factual bases for these reasons "to enable the reviewing court intelligently to review the Secretary's determination...." Bachowski, 421 U.S. at 560, 95 S.Ct. at 1854. This enables the court "to determine with some measure of confidence whether or not the discretion, which still remains in the Secretary, has been exercised in a manner that is neither arbitrary or capricious...." Id
 
 
 [17]
 The district court also cited Local Union No. 639, 543 F.2d at 369, as support for the proposition that the scope of review set out in Bachowski was applicable to certification proceedings. Local Union No. 639 acknowledged that "the Court has a broader scope of decision" in the remedial stages as compared to the "Secretary's determination whether or not to bring original suit." Id. at 378. But, the court concluded that it felt compelled to defer both in principle and on subsequent authority of Bachowski, to find that the Secretary's decision to certify should enjoy a "presumption of fairness and regularity." Id. at 378. The court reasoned that the Secretary's expertise and congressional concern to expedite matters at all stages of the proceedings justified this highly deferential attitude. Id. at 378-79
 However, a review of Local Union No. 639 and the allegations of abuse in the supervised election fail to reveal any charges of Secretarial abuse in the running of the supervised election. All charges were directed at union or employer misconduct in the supervised election, and therefore, were analogous to the functions performed by the Secretary in determining whether to set aside an unsupervised election.
 
 
 [18]
 Bachowski provides in pertinent part:
 The Secretary himself suggests that the rare case that might justify review beyond the confines of the reasons statement might arise, for example, "if the Secretary were to declare that he no longer would enforce Title IV, or otherwise completely abrogate his enforcement responsibilities ... [or] if the Secretary prosecuted complaints in a constitutionally discriminatory manner...." Brief for Petitioner 9 n. 3. Other cases might be imagined where the Secretary's decision would be "plainly beyond the bounds of the Act [or] clearly defiant of the Act." ... Since it inevitably would be a matter of grave public concern were a case to arise where the complaining member's proofs sufficed to require judicial inquiry into allegations of that kind, we may hope that such cases would be rare indeed.
 Bachowski, 421 U.S. at 574, 95 S.Ct. at 1861, quoting DeVito v. Schultz, 72 L.R.R.M. 2682 (D.C.1969).
 This quote suggests that even in the initial screening stages of the proceedings, there may arise circumstances where alleged Secretarial misconduct might permit the court the discretion to go beyond the Secretary's statement of reasons.
 
 
 [19]
 The Secretary's expertise is in determining whether claimed union abuses affected the election but is not in evaluating whether his own misconduct affected the election. This would be to permit him too much discretion and would result in complete reliance on his "good faith." See Carpenters Resilient Flooring, 457 F.2d at 1370