Lynn **MARTIN,** Secretary of Labor, United States Dept. of Labor, Plaintiff,

and

Timothy A. **Brown,** James T. **Hopkins,** John N. **Hayes,** Arthur L. **Holdeman,** Paul H. **Nielsen,** David E. **Edwards,** Intervening Plaintiffs,

v.

**INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS, INTERNATIONAL MARINE DIVISION OF INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO,** Defendant.

Civ. A. No. MJG–89–2071.

United States District Court, D. Maryland.

March 16, 1992.

Robert P. Davis, Sol. of Labor, John F. Depenbrock, Associate Sol., Helene Boetticher and Lewis J. Karesh, U.S. Dept. of Labor, Washington, D.C., Stuart M. Gerson, Asst. Atty. Gen., Richard D. Bennett, U.S. Atty., and Larry D. Adams, Asst. U.S. Atty., for plaintiff.

Ernest Allen Cohen, Tucson, Ariz., for intervening plaintiffs.

Benjamin L. Zelenko, Nussbaum & Wald, Washington, D.C., for Captains Robert Lowen and F. Elwood Kyser.

## MEMORANDUM DECISION

GARBIS, District Judge.

The losing candidates in a Court ordered, Labor Department supervised, rerun union election seek revocation of the Court's Order declaring their opponents elected in accordance with the Secretary of Labor's Certification of Election. Thus, the Court has before it the motion of Captains Lowen and Kyser to Revoke the Court's Order (Declaring Officers Elected in Accordance with Certification of Election). The Court has considered the legal memoranda submitted by the parties and has determined that oral argument is unnecessary to decide the pending motion.

For reasons set forth below, the Court holds that the Movants lack standing to bring the subject motion before the Court. Furthermore, the Court concludes that even if the Movants had standing, the subject motion would be denied on the merits.

## I. BACKGROUND

In the 1988 officer election held by Defendant International Organization of Masters, Mates and Pilots, International Marine Division of International Longshoremen's Association, AFL–CIO ("the Union"), Movants Robert Lowen and F. Elwood Kyser were reelected to the positions of International President and International Secretary/Treasurer, respectively, defeating Intervening Plaintiffs Brown and Hopkins.

After exhausting grievance procedures within the union, Brown and Hopkins filed an administrative complaint with the Secretary of Labor pursuant to Title IV of the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA or the Act), 29 U.S.C. §§ 481–483 (1982). The Secretary's investigation revealed violations of the Act regarding the votes of 562 union members in Panama. Accordingly, the Secretary filed this suit against the Union to have its 1988 officer election nullified. Brown and Hopkins intervened as plaintiffs in the suit. As detailed in a decision issued October 24, 1990, the Court held that the election was tainted by fraud and other irregularities and that:

1. The Union violated Sections 401(c) and 401(e) of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. Sections 481(c) and 481(e), in the conduct of its 1988 officer election;

2. The 1988 election for the offices of International President and International Secretary/Treasurer should be declared null and void; and

3. A new election should be held as quickly as possible under the direction and supervision of the Department of Labor.

The new election was in fact conducted under the direction and supervision of the Department of Labor. Balloting took place between November 21, 1990 and February 20, 1991. Brown won the office of International President by a 410 vote margin and Hopkins was elected International Secretary/Treasurer by 320 votes. During and after the voting period, both sets of candidates filed numerous protests with the Secretary, claiming that serious violations of the Act had occurred during election campaigning. After investigation, the Secretary, although agreeing that the candidates may have committed some violations of the Act, determined that the outcome of the election was not adversely affected. Accordingly, the Secretary filed with the Court a Certification of Election, certifying that Brown and Hopkins were elected International President and International Secretary–Treasurer, respectively, and that

the new election was conducted in accordance with the provisions of the Act, and in conformity with the Constitution of the Defendant so far as lawful and practicable. The Secretary submitted the affidavit of Richard G. Hunsucker, Director, Office of Labor–Management Standards Enforcement, United States Department of Labor, in support of her determination.

The Court, after considering the Secretary's Certification, issued an Order on April 5, 1991, in which it is:

**ADJUDGED, ORDERED AND DECREED** that:

1. The persons name in the ... Certification of Election, Timothy A. Brown and James T. Hopkins are respectively the duly elected International President and International Secretary/Treasurer of the Defendant and shall serve for the remainder of the constitutional terms of office.

\* \* \* \* \* \*

3. Prior to entering final judgment in this case, the Court will provide any party (or other person who has legal standing) the opportunity to move for revocation or revision of this Order based upon an objection to the Certification of Election or any other appropriate basis.

\* \* \* \* \* \*

The pending Motion filed by Lowen and Kyser, filed in accordance with paragraph 3 of the April 5, 1991 Order, seeks revocation of the Court's Order insofar as it declares Brown and Hopkins elected in accordance with the Secretary's Certification.

## II.  STANDING

■ The threshold issue is whether Captains Lowen and Kyser have standing to bring this motion. They are not parties to this case. However, because the April 5, 1991 Order may have led them to believe that it was not necessary to seek intervention in order to file the subject motion, the Court will deem them to have met any technical requirement of filing a Motion to Intervene as parties. Thus, the question becomes whether losing candidates to a Department of Labor-supervised election may intervene to protest the Court's acceptance of the Secretary's certification of the election results.

An understanding of this question requires an understanding of the scheme of Title IV. Under the statute, union members wishing to challenge the conduct of an election must first exhaust internal union remedies. If the members cannot obtain relief through union grievance procedures, they may then file an administrative complaint with the Secretary of Labor. The Secretary investigates the complaint, and determines in her discretion whether there is probable cause to believe a Title IV violation occurred and whether that violation may have affected the outcome of the election. If so, the Secretary files suit in federal court to set aside the election. The district court must then determine, in a *de novo* proceeding, whether the election is void. If so, the court must direct the Union to conduct a new election under the supervision of the Secretary, in conformity with the union's constitution. Upon completion of the new election, the Secretary certifies to the court the names of the persons elected, and the court enters a decree declaring such persons the officers of the union. 29 U.S.C. § 482; *Donovan v. Westside Local 174, Int'l Union*, 783 F.2d 616, 620 (6th Cir.1986).

This scheme was created by Congress upon its discovery that union members were abusing the democratic process in union elections. Congress weighed the need to counter these abuses against its policy of avoiding governmental intrusion into internal union practices. *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 470–71, 88 S.Ct. 643, 647–48, 19 L.Ed.2d 705 (1968). "[Congress'] concern ·to avoid unnecessary intervention was balanced against the policy expressed in the Act to protect the public interest by assuring that union elections would be conducted in accordance with democratic principles." *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 496, 88 S.Ct. 1743, 1746, 20 L.Ed.2d 763 (1968). Accordingly, Congress determined that the best way to maintain this balance was to utilize "the special knowledge and discretion" of

the Secretary of Labor by making an action through the Secretary the exclusive remedy to union election abuses. *See Calhoon v. Harvey*, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964). In this way, individuals cannot block or delay union elections by individually filing federal court suits. *Id.*

The Supreme Court has not specifically addressed the question of whether a losing candidate in a supervised rerun election as the right to intervene for the purpose of challenging the Secretary's determination to certify that election. The Supreme Court addressed the question of intervention in the Secretary's suit to challenge the original *unsupervised* election in *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). In *Trbovich*, the Court noted that the Act prohibits union members from initiating a private suit to set aside an election. *Id.* at 531, 92 S.Ct. at 633. The Court held, however, that where the intervenor "seeks only to participate in a pending suit that is plainly authorized by the statute," such intervention is not prohibited. The Court stated that:

> A review of the legislative history shows that Congress made suit by the Secretary the exclusive post-election remedy for two principal reasons: (1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted with respect to a single election. Title IV ... serves these purposes by referring all complaints to the Secretary so that he can screen out frivolous ones, and by consolidating all meritorious complaints in a single proceeding.

*Id.* at 532, 92 S.Ct. at 633. The Court concluded that union members may participate in the litigation, "so long as that participation [does] not interfere with the screening and centralizing functions of the Secretary." *Id.* at 533, 92 S.Ct. at 633. Accordingly, the Court held that union members may intervene so long as they assert positions in support of the Secretary's complaint. *Id.* at 536, 92 S.Ct. at 635.

While *Trbovich* is instructive, it does not directly address a losing candidate's right to intervene in order to object to the Secretary's certification of the results of a supervised election. The United States Court of Appeals for the Fourth Circuit has not considered the issue, and the circuits that have considered the issue are split as to the proper approach.

The Third and D.C. Circuits, in *Usery v. Local Union No. 639, Int'l Bhd. of Teamsters*, 543 F.2d 369, 377 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977), and *Hodgson v. Carpenters Resilient Flooring Local Union No. 2212*, 457 F.2d 1364, 1370 (3rd Cir. 1972), held that a losing candidate may intervene to contest the Secretary's certification of a supervised election. In both cases, the courts' reasoning centered on the idea that under the statutory scheme, once an unsupervised election is put aside, the Secretary's duty is "to aid the court in fulfilling *its* obligation to ensure that the supervised election is conducted in accordance with the law." *Local Union No. 639*, 543 F.2d at 377 (emphasis in original). These courts concluded that without intervention, the Secretary's certification is placed beyond effective judicial control. *Carpenters Resilient Flooring*, 457 F.2d at 1369.

The Ninth and Tenth Circuits have found that intervention by a losing candidate may not be permitted under the standards of *Trbovich*.[1] In *Usery v. District No. 22, United Mine Workers of America*, 567 F.2d 972 (10th Cir.1978), the complainant

---

[1]. It appears that the Sixth Circuit has also held that a losing candidate may not intervene as a defendant. The court in *Donovan v. Westside Local 174, Int'l Union*, 783 F.2d 616, 623 (6th Cir.1986) allowed intervention by a defeated candidate who alleged not that the Secretary's conclusions were wrong regarding how the candidates conducted their campaigns, but rather that the Secretary *himself* violated Title IV. The Sixth Circuit found that intervention was only allowable within these narrow confines. In contrast, the court found that allowing intervention on a *"per se* basis in all certification proceedings" would result in burdensome delays. *Id.*

was a union member who had won in the first, unsupervised election, but who was defeated in the later supervised election. The court found that the complainant was "requesting intervention so as to litigate anew the complaints which were entertained by the Secretary and which were reviewed by the district court. In effect then, he proposes to file what amounts to a counterclaim, a new independent action." *Id.* at 974. The court held that intervention by a losing candidate was contrary to the purposes of Title IV. "Congress has chosen to empower the Secretary to make the investigation and to find the facts. Congress did not contemplate that the court would be retrying the issues." *Id.* at 975. Moreover, the court noted the necessity of avoiding "continuous challenges and their attendant delays." *Id.*

The court in *Brennan v. Silvergate District Lodge No. 50, Int'l Ass'n of Machinists*, 503 F.2d 800 (9th Cir.1974), similarly refused to allow intervention by a losing candidate to contest the Secretary's certification. Noting that intervention on the side of the union interferes with the Secretary's functions, the court found that the losing incumbent "has no right to circumvent the Secretary's function by raising by way of intervention challenges to an election that were deemed unmeritorious by the Secretary." *Id.* at 808. The court also noted that allowing intervention in these circumstances would necessarily involve delays in the resolution of the case. *Id.* at 806.

This Court agrees with the Ninth and Tenth Circuits and disagrees with the Third and D.C. Circuits. In the Court's judgment, the view of those circuits denying standing is the more reasoned one and the most consistent with the logic of *Trbovich.*

In this case, Captains Lowen and Kyser complained to the Secretary of irregularities in the supervised election, and the Secretary rejected their complaints as without merit. As the court noted in *Silvergate District Lodge No. 50*, "this is precisely the type of claim that the Congress intended to be barred from the courtroom when it made the Secretary's action the exclusive

means of challenging election returns." 503 F.2d at 808. Indeed, *Trbovich* instructs that Congress intended to "insulate the union from any complaint that did not appear meritorious to *both* a complaining member *and the Secretary.*" 404 U.S. at 537, 92 S.Ct. at 635–36 (emphasis added).

For the foregoing reasons, the Court concludes that Movants Lowen and Kyser lack standing to present the subject Motion. This is a sufficient basis for denial of the Motion. However, to avoid a possible unnecessary proceeding should this case be appealed and the appellate court concludes that the Movants have standing, the Court will address, and decide, the Motion on its merits.

## III. THE MERITS OF THE MOTION

Captains Lowen and Kyser assert that the Brown/Hopkins campaign violated the Act in numerous ways which affected the outcome of the election. They contend, therefore, that the Court should order a new election, or, at a minimum, hold an evidentiary hearing on whether the Secretary's certification was improper. Even if Lowen and Kyser had the standing to make these contentions, their Motion must be denied.

### A. Standard of Review

The Supreme Court delineated the proper standard for reviewing the Secretary of Labor's discretionary decision not to bring a civil action to set aside an *unsupervised* union election for violations of the Act in *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). The Court, after reviewing the policies advanced by LMRDA, concluded that "since the statute relies upon the special knowledge and discretion of the Secretary for the determination of both the probable violation and the probable effect, clearly the reviewing court is not authorized to substitute its judgment for the decision of the Secretary not to bring suit." *Id.* at 571, 95 S.Ct. at 1860. Accordingly, the Court delineated an "arbitrary and capricious" standard of review. *Id.* Moreover, the Court held that in order to allow the district court

to review the Secretary's decisions in an intelligent way, the Secretary should submit to the court a "Statement of Reasons" supporting his determination. *Id.* The Court determined that the district court's review must be limited to this statement. *Id.* at 573, 95 S.Ct. at 1860.

> Except in what must be the rare case, the court's review should be confined to examination of the "reasons" statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious. Thus, review may not extend to cognizance or trial of a complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election. The full trappings of adversary trial-type hearings would be defiant of congressional objectives.

*Id.* at 572–73, 95 S.Ct. at 1860. The Court concluded that the district court must uphold the Secretary's discretionary determination not to bring suit if there is a "rational and defensible basis" given in the Statement of Reasons for that decision. *Id.* (citing *DeVito v. Shultz,* 72 L.R.R.M. 2682, 2683 (DC 1969)).

■ The arbitrary and capricious standard developed in *Bachowski* applies as well to the Secretary's decision to certify a supervised election. The certification of the election results involves a discretionary function of the Secretary exactly the same as that considered in *Bachowski.* The same considerations of the Secretary's "special knowledge and discretion" are applicable, particularly when the Secretary's ongoing control of the supervised election is contemplated. Additionally, the statu-

tory policy of resolving post-election disputes without delay is present at this stage as well. *See, e.g., Local Union No. 639,* 543 F.2d at 378. *Accord Donovan v. Local 6, Washington Teachers' Union,* 747 F.2d 711, 715 (D.C.Cir.1984); *District No. 22,* 567 F.2d at 973; *Donovan v. Local 299, Int'l Bhd. of Teamsters,* 515 F.Supp. 1274, 1284 (E.D.Mich.1981); *Brock v. Westside Local 174, Int'l Union,* 643 F.Supp. 602, 603 (E.D.Mich.1986). *See also Brennan v. Local 551, United Auto. Workers,* 486 F.2d 6, 8 (7th Cir.1973) (party objecting to decision of Secretary during supervised election assumes heavy burden of persuasion).

■ Thus, the Court's review of the Secretary's decision to certify a supervised election is limited to whether the Secretary's determination was arbitrary and capricious. The Court's review is further limited to the Secretary's affidavit supporting her decision that either violations did not occur or that if there were violations of the Act, they did not affect the outcome of the election.[2] Moreover, because of the Secretary's ongoing control, a supervised election enjoys a "presumption of fairness and regularity" that is not upset simply because of the existence of violations. *Local Union No. 639,* 543 F.2d at 379.[3] It is with this standard of review in mind that the Court examines Movants' allegations.

## B. The LMRDA Violations

Movants Lowen and Kyser base their objections to the Secretary's certification on five specific challenges to the legality of the rerun election. The Secretary responded to each of these challenges through the affidavit of Richard G. Hunsucker, Director, Office of Labor–Management Stan-

---

**2.** In supervised election cases, the Secretary provides an affidavit which contains the same information as a Statement of Reasons does when the Secretary declines to file suit. The affidavit similarly informs the court and complaining members of "both the grounds of decision and the essential facts upon which the Secretary's inferences are based." *Bachowski,* 421 U.S. at 574, 95 S.Ct. at 1861.

**3.** Lowen and Kyser argue that violations of the Act by the Brown/Hopkins campaign makes

out a prima facie case of probable impact on the outcome of the election. That is the rule for violations committed in the course of an *unsupervised* election. *Wirtz v. Hotel Employees Local 6,* 391 U.S. at 506–07, 88 S.Ct. at 1752. In an unsupervised election, the violations are not susceptible of quantification as opposed to a rerun election, where the Secretary supervises and controls the election. *Local Union No. 639,* 543 F.2d at 379.

dards Enforcement, United States Department of Labor.

**■ 1. Brown's use of an employer list.** During the campaign, Brown and Hopkins made campaign mailings using a mailing list, portions of which were obtained through an employer, American Heavy Lift (AHL) in violation of the Act. The Secretary determined that only 139 AHL employees out of the 382 who received the improper mailing (and thus could be influenced by it) actually voted. Because this margin of difference was not enough to have changed the outcome of the election for either office, the Secretary concluded that the violation did not affect the election.

In contrast, Lowen and Kyser assert that all 382 AHL names must be considered, which would affect the election results. They assert that "Hunsucker's limited analysis of only the number of tainted votes actually cast is not in accordance with law because it disregards the potential effect of the violation on eligible members who may have decided *not to vote* after obtaining the unlawful mailings." They cite *Schultz v. Radio Officers' Union*, 344 F.Supp. 58, 69–70 (S.D.N.Y.1972) and *Marshall v. Local Union 478, Laborers' Int'l Union*, 461 F.Supp. 185, 192 (S.D.Fla.1978) in support of their position.

The Secretary's decision that this violation did not affect the outcome of the election was not arbitrary and capricious, nor contrary to law. In this case, both sets of candidates made extensive mailings to the union membership. Unlike the cases cited by Lowen and Kyser, this case does not involve a situation where only one group of candidates was able to reach the membership with their campaign materials. In this case, all the candidates had the option of doing a segregated mailing to the AHL list. Moreover, it is far too speculative to assume that the mailing convinced members not to vote, particularly in this case in which there is no evidence that members were encouraged not to vote or were prevented from voting. A similar situation was addressed by the court in *Local Union No. 639*, where the court stated: "Admittedly, it is conceivable that [the violation] may have worked in a 'chilling effect' on voter turnout. *But this is mere speculation* in the absence of a showing by appellants of a significantly reduced turnout compared to previous elections." 543 F.2d at 380 (emphasis added). Movants do not make such a showing. Accordingly, we defer to the Secretary's judgment, based on her expertise and involvement with the election, that the election results were not affected.

**■ 2. Employer endorsement of Brown and Hopkins.** During the campaign, David Edwards, the Operations Manager of American Workboats, wrote an endorsement for Brown and Hopkins which Brown distributed to union members as part of his campaign. The endorsement was addressed to the Pacific Maritime Region, a group of approximately 800 union members. Lowen and Kyser assert that this was unlawful employer assistance.

According to the Hunsucker affidavit, the Secretary determined that there was no violation of the Act. Edwards, besides being Operations Manager for American Workboats, is also a union member. The Secretary did find that, "in certain circumstances," Edwards could be viewed as an employer. In this case, however, investigation revealed that Edwards was not acting in his position as a supervisor, but rather in his role as a union member. The Secretary could find no evidence that employer time, equipment, or facilities were used. Additionally, Edwards was a former running mate of Brown, and his support of Brown was well known. For these reasons, the Secretary determined that no violation had occurred.

It is true that, under the Act, it is immaterial whether a management official has offered assistance using only his own personal funds. *Marshall v. Local Union 20, Int'l Bhd. of Teamsters*, 611 F.2d 645, 651 (6th Cir.1979). The Secretary did not base her determination, however, on the fact that Edwards used private funds. Rather, the Secretary determined that Edwards was acting as a union member, not as an employer, and the use of private funds was one indication of this. Lowen and Kyser point to a sentence in the endorsement where Edwards states that he is "in

management now" as showing that he was acting as an employer. This is not conclusive. We cannot say that the Secretary acted arbitrarily in looking at the situation as a whole, including considering the fact that no employer time, equipment or facilities were used, coupled with Edwards' reputation as a close colleague of Brown. This is a rational basis upon which the Secretary could find that there was no employer assistance in violation of the Act.

■ *3. MEBA assistance to Brown and Hopkins.* During the campaign, a Marine Engineers Beneficial Association (MEBA) official distributed Brown campaign literature to vessels on union time. The Secretary determined that this was a violation. Because the literature was delivered to only two ships with four union members each, however, the Secretary found that only eight votes could have been influenced. Therefore, the violation could not have affected the campaign. This determination was clearly rational, and was not arbitrary or capricious.

■ *4. Use of the Union's Building Association mailing list and funds.* Lowen and Kyser contend that during the campaign, Mr. Florin Dente used the Union's Building Association Trust Fund mailing list and funds to send out correspondence promoting the Brown/Hopkins candidacy in violation of the Act. Dente sent two letters which are now in contention. A November 9, 1990 letter was sent to fourteen members. The Secretary determined that neither the Building Association mailing list nor its funds were used. Dente also sent a January 14, 1991 letter, prepared and distributed by Dente on behalf of an ongoing class action. While Lowen was mentioned in this letter, the Secretary determined that it was not related to the election, and thus was not campaign literature. The Secretary concluded, therefore, that no violation occurred by these mailings. This is clearly a rational conclusion, and is not arbitrary nor capricious.

■ *5. Assistance by an employer labor relations consultant.* Finally, Lowen and Kyser assert that Brown and Hopkins were unlawfully assisted by an employer labor relations consultant who acted as a campaign manager. The Secretary refused to consider this protest because it was made past the proscribed protest period. While the Secretary accepted and investigated two claims made after the cut-off date of February 28, 1991, these protests were under a week late. In contrast, this protest wasn't received until over two weeks past the cut-off date. The Secretary was not acting arbitrarily in creating an ending date for protests, and then acting accordingly. Both sides to the election were equally bound by the proscribed date. It is the policy of LMRDA that post-election protests be expeditiously resolved. *Local Union 639,* 543 F.2d at 378–79.

## IV. CONCLUSION

For the foregoing reasons, Movants Lowen and Kyser's Motion to Revoke the Court's April 5, 1991 Order is DENIED. Final judgment has been entered by separate Order in accordance with this Memorandum Decision.