503 F.2d 800
 87 L.R.R.M. (BNA) 2935, 75 Lab.Cas. P 10,322
 Peter J. BRENNAN, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee,
v.
SILVERGATE DISTRICT LODGE NO. 50, INTERNATIONAL ASSOCIATION
OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, Defendant and
Third Party Plaintiff-Appellee, v. David L. CHAMBERS,
Intervenor-Appellee, Al J. Baffone and A. A. Denton,
Applicants for Intervenors-Appellants.
 Nos. 72-2657, 72-3166, 73-2908.
 United States Court of Appeals, Ninth Circuit.
 Sept. 13, 1974.
 
 Richard D. Prochazka (argued), Domnitz & Prochazka, San Diego, Cal., for Baffone.
 Stephen Reinhardt (argued), Bodle, Fogel, Julber & Reinhardt, Los Angeles, Cal., for Local 50.
 John T. Popko (argued), Greer, Popko, Miller & Foerster, San Diego, Cal., for intervenor-appellee.
 Michael H. Stein (argued), Dept. of Justice, Washington, D.C., for plaintiff-appellee.
 Before DUNIWAY and HUFSTEDLER, Circuit Judges, and LUCAS,* district judge.
 OPINION
 DUNIWAY, Circuit Judge:
 
 
 1
 These are consolidated appeals arising from an action brought by the Secretary of Labor against Silvergate District Lodge No. 50, International Association of Machinists and Aerospace Workers, AFL-CIO (Silvergate) under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. 481 et seq. In No. 72-2657, Baffone and Denton appeal from an order denying their application to intervene in the action.[1] In No. 72-3166, Baffone appeals from a judgment in the case. In No. 73-2908, Baffone appeals from the final judgment and from an order denying his second application to intervene.
 
 1. The Facts
 
 2
 On December 1, 1970, and January 5, 1971, Silvergate held elections for President-Directing Business Representative (among other offices) and Baffone was elected, defeating one Chambers. Chambers protested the conduct of the election to the International Union and, after exhausting his internal union remedies, filed a complaint under Title IV of the LMRDA 29 U.S.C. 482(a), with the Secretary of Labor. The Secretary investigated the charges and determined that there was probable cause to believe that violations of the Act had occurred during the election. The Secretary then filed this action in the district court seeking to have the election of Baffone set aside (as well as that of Denton as the Secretary-Treasurer, see note 1, supra) and asking the district court to order new elections.
 
 
 3
 After the filing of the Secretary's suit, the International Union imposed a trusteeship on Silvergate. Consequently, Baffone lost control of the affairs of Silvergate and was no longer able to direct the defense of the Secretary's action. On June 29, 1972, Baffone filed a motion under F.R.Civ.P., Rule 23(a)(2), seeking to intervene as a party defendant to defend that validity of the election. On August 7, 1972, after holding a hearing, the district court entered an order denying the motion. No 72-2657 is Baffone's appeal from that order.
 
 
 4
 After Baffone's motion to intervene was denied, the Secretary and Silvergate (still in Trusteeship) settled the action by entering into a stipulation for judgment which provided for the setting aside of the January 1971 election of Baffone and for the holding of a rerun election under the supervision of the Secretary. On December 11, 1972, the district court entered a 'judgment' pursuant to that stipulation. See 29 U.S.C. 482(c). No 72-3166 is Baffone's appeal from that judgment.
 
 
 5
 On March 20, 1973, the Secretary conducted a rerun election and this time Chambers defeated Baffone. The Secretary filed in the action a certification of the results of the election. See 29 U.S.C. 482(c). Baffone moved to intervene in this proceeding as a party defendant alleging that the election was fraught with irregularities. The district court on July 31, 1973, entered an order denying the motion to intervene and entered a final judgment upholding the certification. In No. 73-2908, Baffone appeals from the order and the judgment.
 
 
 6
 2. The orders denying intervention are appealable.
 
 
 7
 Where a party is entitled to intervene as a matter of right, an order denying intervention is appealable. Reich v. Webb, 9 Cir., 1964, 336 F.2d 153, 156. On the other hand, where allowing intervention is within the court's discretion, ordinarily an order denying leave to intervene is not appealable. See, e.g., Burger Chef Systems, Inc. v Burger Chef of Michigan, Inc., 6 Cir., 1964, 334 F.2d 926. See also Hodgson v. United Mine Workers of America, 1972, 153 U.S.App.D.C. 407, 473 F.2d 118, 127, n. 40.
 
 
 8
 We need not decide, however, which type of intervention Baffone sought. Even in a case where intervention is permissive, an order denying leave is applicable if the intervenor has 'no remedy to litigate (his) question, except by intervening.' State of Washington v. United States, 9 Cir. 1936, 87 F.2d 421, 434. See also People of the State of California v. United States, 9 Cir., 1950, 180 F.2d 596, 600. We think that the present case falls within that rule. Judgments in the case directly affect Baffone's claimed rights which grow out of the contested election, and, as we will show, there is no other forum in which he could litigate his claims. The two orders denying Baffone's motions to intervene are appealable.
 
 
 9
 3. Baffone has no standing to appeal from the judgments.
 
 
 10
 Having been denied leave to intervene, Baffone never became a party to the action. Under 29 U.S.C. 482(d), the December 11, 1972 and July 31, 1973 judgments are appealable. But Baffone has no standing to appeal from them. The rule is an old one. See Ex Parte Cutting, 1876, 94 U.S. 14, 24 L.Ed. 49. It is arguable that we should depart from it here because, if the orders denying intervention are reversed, it would be necessary to reverse the judgments in order to afford Baffone full relief. We need not decide that question, however, because we hold that the orders denying intervention must be affirmed. We treat the appeals from the judgments as protective or precautionary only.
 
 
 11
 4. The case is not moot.
 
 
 12
 Counsel for Silvergate suggests that the case is moot. Counsel for the other appellees do not. The bases for the suggestion are (1) that the election under the Secretary's supervision has been held, Chambers was elected, and he has served his term, and (2) that at the end of the term another, unsupervised, election has been held. These events, however, are the result of the inevitable delays that arise from litigation. The Supreme Court has been most reluctant to allow intervening elections which have been held because of such delays to moot properly raised issues. See Wirtz v. Bottle Worker's Ass'n, 1968, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705. While that case is distinguishable from the case at bar, we think that, in principle, it controls the mootness question here. The questions presented by Baffone are important, and unless decided here, they will never be decided.
 
 
 13
 5. Baffone's claimed right to intervene.
 
 
 14
 (a) The proceeding leading to setting aside the election.
 
 
 15
 Baffone's primary contention is that he was entitled to intervene as of right under Rule 24(a)(2) F.R.Civ.P. because he had a vital interest in the litigation and because his interest was not adequately represented by either party. He argues that this position is supported by the LMRDA, by the cases that have interpreted that statute, and by the due process clause of the Constitution. The Secretary relies entirely upon statutory interpretation to support his contention that intervention on the side of the union in suits brought under 29 U.S.C. 482(b) is not permitted.
 
 
 16
 Baffone's contention that the intervention guidelines of Rule 24 control the issue at bar is supported by the only other circuit court case[2] that has faced the issue of the permissibility of intervention as a defendant in a case like this one. Hodgson v. Carpenters Resilient Flooring Local U. No. 2212, 3 Cir. 1972, 457 F.2d 1364, 1368.[3] There the Third Circuit held that 'the status of an intervenor must, under Trbovich (Trbovich v. Mine Workers, 1972, 404 U.S. 428, 92 S.Ct. 630, 30 L.Ed.2d 686), be determined by standards applicable under Fed.R.Civ.P. 24(a).' We do not agree.
 
 
 17
 The Federal Rules of Civil Procedure do not 'abridge, enlarge or modify any substantive right,' 28 U.S.C. 2072, nor do they enlarge the jurisdiction of the federal courts. See United States v. Sherwood, 1941, 312 U.S. 584, 589-590, 61 S.Ct. 767, 85 L.Ed. 1058. 'Thus the basic question as to the substantive statutory right to intervene before . . . a district court . . . should primarily be one of statutory interpretation in light of intervention principles.' 3B Moore's Federal Practice 24.06(3-1) at 24-111 (1974). In considering the right to intervene under the LMRDA in Trbovich, supra, the Supreme Court did not discard these principles. In Trbovich the Court carefully scrutinized the intent of Congress in adopting the LMRDA and permitted intervention there only when it was convinced that intervention would not frustrate the objectives of the statute. Id., 404 U.S. at 536, 92 S.Ct. 630. The Court turned to Rule 24 only after it had considered the statutory bars to intervention. Therefore, we conclude that we must first decide whether intervention of the sort requested here is permitted by the statute before we can determine whether the applicable standards under Rule 24 are relevant. See Hodgson, v. United Mine Workers of America, supra, 473 F.2d at 127. To do otherwise, as is suggested by Baffone, would be to put the cart before the horse, something that should not be done even in this age of the automobile.
 
 
 18
 Baffone advances three arguments to support his claimed right to intervene to oppose the Secretary's action to set aside the election. First, he contends that in Trbovich the Supreme Court recognized the right of the individual union member to have his personal interest adequately represented in a suit to set aside a union election. Second, he asserts that the LMRDA reflects the intent of Congress to have the issue of the validity of union elections subject to viable judicial review which, he argues, necessitates the intervention of all interested parties. Third, he asserts that he has no other forum in which to defend his right to hold the office that he won in what he claims to have been a fair election. Therefore, the arguments runs, to deny him the right to intervene is contrary to the intent of Congress to allow for a vigorous defense of the election's validity, and is unconstitutional in that it deprives him of property without due process. These contentions will be discussed seriatim.
 
 
 19
 (1) The argument based upon Trbovich.
 
 
 20
 In Trbovich the Supreme Court held that 'in a post-election enforcement suit, Title IV imposes no bar to intervention by a union member, so long as that intervention is limited to the claims of illegality presented by the Secretary's complaint.' (Trbovich v. Mine Workers, supra, 404 U.S. at 537, 92 S.Ct. at 636, emphasis added) A union member was permitted to intervene on the side of the Secretary, but limited to supporting only those claims deemed meritorious by the Secretary. The intervenor was not permitted to assert additional claims. Thus the Court further emphasized the need to limit intervention to situations that are compatible with the Congressional intent embodied in the LMRDA. Trbovich is not an unconditional recognition of the rights of individual union members to protect their personal interest by intervening in suits brought by the Secretary under Title IV. Rather, Trbovich stands for the narrow proposition that intervention on the side of the Secretary for the limited purpose of advancing the claims of the Secretary is not barred by Title IV and for the more general proposition that all other claims of intervention are subject to the limitations imposed by the statute.
 
 
 21
 (2) The intent of Congress.
 
 
 22
 On at least three occasions the Supreme Court has carefully considered the intent of Congress in enacting the LMRDA Trbovich v. Mine Workers, supra, Wirtz v. Bottle Blower's Ass'n, supra; Calhoon v. Harvey, 1964, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190. In Bottle Blower's the Court noted that 'the extensive and vigorous debate over Title IV manifested a conflict over the extent to which governmental intervention in this most crucial aspect of internal union affairs (elections) was necessary or desirable.' 389 U.S. at 471, 88 S.Ct. at 648. In enacting Title IV, Congress was attempting to accommodate two important interests: the vital public interest in maintaining free and democratic union elections, and the equally vital interest in allowing unions to run their own elections and to resolve their own internal controversies. Id. at 471-476, 88 S.Ct. 643. In order to vindicate these two interests, Congress enacted a statutory scheme whereby
 
 
 23
 'Title IV . . . sets up an exclusive method for protecting Title IV rights, by permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any election because of violations of Title IV. Upon complaint the Secretary investigates and if he finds probable cause to believe that Title IV has been violated, he may file suit in the appropriate district court. It is apparent that Congress decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest. Cf. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 242, (79 S.Ct. 773, 3 L.Ed.2d 775). In so doing Congress . . . decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV. Reliance on the discretion of the Secretary is in harmony with the general Congressional policy to allow unions great latitude in resolving their own internal controversies, and where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts.' Calhoon v. Harvey, supra, 379 U.S. at 140, 85 S.Ct. at 296.
 
 
 24
 In Trbovich the Court looked to these dual Congressional concerns to determine whether or not the Act barred intervention. Trbovich v. Mine Workers, supra, 404 U.S. at 530-536 (part I), 536-537 (part II), 92 S.Ct. 630. The Court determined that 'Congress made suit by the Secretary the exclusive post-election remedy for two principal reasons: (1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted with respect to a single election.' Id. at 532, 92 S.Ct. at 633. The Court stated that Congress was not opposed to participation by union members in the litigation, 'so long as that participation did not interfere with the screening and centralizing functions of the Secretary.' Id. at 532-533, 92 S.Ct. at 633. The Court held that intervention on the side of the Secretary, limited to support of the Secretary's contentions, did not interfere with the screening and centralizing functions of the Secretary. Moreover, the Court determined that such intervention would not subject the union to any intrusion into its affairs not initially caused by the Secretary's decision to bring suit.
 
 
 25
 Intervention on the side of the union presents a different situation: it interferes with the Secretary's functions under the statute and it is not in the union's interest. The Secretary's goal is to ensure fair and democratic union elections. In the performance of this duty, 'the Secretary may attempt to settle the matter without any lawsuit; the objective is not a lawsuit but to 'aid in bringing about a settlement through discussion before resort to the courts.' Calhoon v. Harvey, supra.' Wirtz v. Bottle Blowers Ass'n, supra, 389 U.S. at 472, 88 S.Ct. at 649. When the Secretary must resort to a lawsuit, the burden upon him and upon the union greatly increases. The union is confronted with defense of the internal operation of its elections and inevitably it must publicly expose the scars of its internal warfare. Because the overriding purpose of Title IV is to ensure democratic elections, when the union and the Secretary agree to take mutual action in pursuit of that aim, e.g., to hold new supervised elections, the interests of the act in providing a judicial remedy are satisfied.
 
 
 26
 If an incumbent officer can intervene as a matter of right to oppose the Secretary's action to set aside an election, a peaceful settlement of the election dispute will almost never be attainable. Even if the Secretary and the union agree, as they did here, that new elections should be held, they will still have to litigate this issue with the intervenor. Understandably, the incumbent officer's interest in the lawsuit will be the preservation of his own position. Because 29 U.S.C. 482(a) provides that the election is presumed to be valid until a final order to the contrary is issued, the incumbent officer will be able to delay the litigation by contesting every possible issue. To allow the incumbent officer to so defend the validity of the elections would severely undermine the Congressional interest in expediting the holding of democratic union elections.
 
 
 27
 We are not persuaded by the objection to this reasoning that under normal circumstances the incumbent officer is able to control the union and thus direct the defense of the suit in a manner designed to promote his personal interest in staying in office. In such a situation, the incumbent has at least a legitimate claim that his interest and that of the Union coincide because it is the 'union's' decision to defend the validity of the elections. The only genuine interest that the union has in the lawsuit is the defense of the integrity of its elections. To argue that the incumbent's ability to abuse his position and circumvent the interests of the statute in one situation gives the incumbent the right to advance his own personal interests against those of the Secretary and the union in all cases is to fly in the face of the statutory purpose.
 
 
 28
 Congress drafted Title IV to provide that the only method of challenging elections is by a lawsuit brought by the Secretary 'against the labor organization as an entity.' 29 U.S.C 482(b) emphasis added. The only purpose of the suit is to secure enforcement of the Act. Congress did not intend that the action be a forum for the resolution of internal union disputes nor for the incumbent to seek to vindicate his own personal interests. The incumbent officer has no legitimate interest in the lawsuit apart from those interests represented by the union as an entity, i.e., to preserve the fairness of the union's elections. See Wirtz v. Teamsters Ind. & Allied Emp. U. Local No. 73, supra, 257 F.Supp. at 788. Therefore, 29 U.S.C. 482(b) bars intervention by an incumbent officer as a party defendant.
 
 
 29
 (3) The due process argument.
 
 
 30
 We do not agree with Baffone that our construction of the statute deprives him of property, the right to hold his office, without due process, because it leaves him without a forum to advance his claims.
 
 
 31
 Baffone's complaint that the union in trusteeship does not adequately represent his interests is properly cognizable in another forum. The office that he held was created by the union, and he held it upon the conditions prescribed by the union. His first remedy, therefore, when the trusteeship was imposed, was the internal procedures of the union. This remedy he utilized, but without success.
 
 
 32
 Title III of the LMRDA, 29 U.S.C. 461 et seq. provides another remedy. Baffone could have attacked the trusteeship under 464(a). This action is not the proper forum for attacking the trusteeship or asserting Baffone's claimed rights to office, or to its perquisites, if any.
 
 
 33
 Moreover, Baffone had a remedy, albeit not a judicial remedy, when the Secretary was investigating to determine whether this action should be brought. Under the statute the Secretary is obligated to investigate charges of statutory violations before filing a complaint. Baffone had an opportunity to refute the charges of election irregularities during this investigation. This is the only forum that Congress has provided for union members to challenge the validity of elections, Calhoon v. Harvey, supra, 379 U.S. at 140, 85 S.Ct. 292, and Baffone, as the head of the union during the investigation, had ample access to this forum.
 
 
 34
 Finally, neither the Secretary nor the court deprived baffone of his office. At the conclusion of the litigation, Baffone was able to present his case to the union members. It was their votes that ultimately ousted him from office.
 
 
 35
 (b) The Certification Proceeding.
 
 
 36
 Baffone was not entitled to intervene as a party defendant to contest the validity of the rerun election that was held under the Secretary's supervision pursuant to the court's order. In Calhoon the Court held that the exclusive post-election remedy under the Act was a suit brought by the Secretary, In Trbovich the Court held that this exclusivity was provided for to protect unions from frivolous litigation and unnecessary judicial interference with their affairs. Trbovich v. Mine Workers, supra, 404 U.S. at 532, 92 S.Ct. 630. In Trbovich the Court also held that no intervention in the Secretary's screening function was permissible because 'Congress intended to insulate the union from any complaint that did not appear meritorious to both a complaining member and the Secretary.' Id. at 537, 92 S.Ct. at 635.
 
 
 37
 In the case before us, Baffone complained to the Secretary of irregularities in the rerun election and the Secretary rejected his complaints as unmeritorious. We agree with Judge Kalodner's observation in dissent in Carpenters that this is precisely the type of claim that the Congress intended to be barred from the courtroom when it made the Secretary's action the exclusive means of challenging election returns. Hodgson v. Carpenters Resilient Flooring Local U. No. 2212, supra, 457 F.2d at 1371-1372. Baffone has no right to circumvent the Secretary's function by raising by way of intervention challenges to an election that were deemed unmeritorious by the Secretary. Trbovich v. Mine Workers, supra. The district court properly denied appellant's motion to intervene as a party defendant to contest the Secretary's certification of the election results.
 
 
 38
 In No. 72-2657, the order appealed from is affirmed as to Baffone. The appeal of Denton is dismissed as moot.
 
 
 39
 In No. 72-3166, the appeal is dismissed.
 
 
 40
 In No. 73-2908, the order denying intervention is affirmed. The appeal from the judgment is dismissed.
 
 
 
 *
 The Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 After the denial of Denton's motion to intervene, the district court dismissed with prejudice the Secretary's complaint with respect to Denton's December 1970 election. Denton's appeal is therefore moot
 
 
 [2]
 District courts have ruled on motions to intervene in similar situations in at least three reported decisions. See Shultz v. United Steelworkers of America, W.D.Pa., 1970, 312 F.Supp. 1044 (denying the right to intervene to challenge the terms of the Secretary-union's stipulation for a new election); Shultz v. United Steelworkers of Am. AFL-CIO-CLC (Dist. 19), W.D.Pa., 1970, 312 F.Supp. 538, 539 (allowing intervention by the incumbent officer to defend the validity of the election); Wirtz v. Teamsters Industrial & Allied Emp. U. Local No. 73, N. D.Ohio E.D., 1966, 257 F.Supp. 784, 788-790 (denying the incumbent officers the right to intervene to defend their election)
 
 
 [3]
 The facts in Carpenters are similar to those in No. 73-2908 here, i.e., the issue concerned the availability of intervention in an action brought by the Secretary to certify the results of an election that he had supervised. Though the court in Carpenters opined that Rule 24 applied to all intervention situations under the Act, it specifically narrowed its allowance of intervention to certification proceedings brought by the Secretary. See Hodgson v. Carpenters Resilient Flooring Local U. No. 2212, supra, 457 F.2d at 1368