Keira WALLMAN, Plaintiff,

v.

TOWER AIR, INC., Defendant.

No. C 99–0557 MJJ(JL).

United States District Court,
N.D. California,
San Francisco Division.

Oct. 8, 1999.

Scott Edward Cole and Patrick J. Clifford, Scott Cole & Associates, Oakland, California, for Plaintiff.

William J. Taylor, Chilvers & Taylor, PC, Emeryville, California, for Defendant.

## ORDER COMPELLING DISCLOSURE OF PASSENGER LIST SUBJECT TO PROTECTIVE ORDER

LARSON, United States Magistrate Judge.

### INTRODUCTION

The parties filed a joint request for a ruling by the court on Plaintiff's request that Defendant provide a list of all passengers on Tower Air Flight 23 from New York to San Francisco on January 17, 1999. The district court (Hon. Martin J. Jenkins) referred the matter for decision by a magistrate judge. The matter was heard by the undersigned on September 22, 1999. Timothy P. Rumberger and Scott Edward Cole appeared for Plaintiff Keira Wallman ("Plaintiff"). Alan J. Zacharin appeared for Defendant Tower Air, Inc. ("Defendant").

### BACKGROUND

According to the Complaint, on January 17, 1999, Plaintiff was a passenger on Tower Air Flight 23, from New York to San Francisco. The plane was delayed at Kennedy Airport while a crew attempted to repair the engine on the Boeing 747 which was to carry Plaintiff and other passengers to San Francisco. They were all eventually moved to another aircraft, which took off four hours late.

About fifteen minutes after take-off, passengers observed a brilliant red flash to the left of the plane, near the engine. The plane lurched violently to the left. Some of the flight attendants began shouting hysterically, and one informed the passengers over the intercom to remove jewelry and glasses and prepare for an emergency landing. The passengers believed a fatal crash was imminent.

However, the plane landed without incident. The passengers said the crew made no attempt to calm or reassure them. They were also upset when Tower personnel attempted to re-schedule them on another Tower flight. Tower personnel ultimately summoned the New York Police Department to handle a near-riot by the passengers. The next day Plaintiff was placed on a TWA flight to San Francisco.

Plaintiff claims personal injury, medical expenses, loss of consortium, mental anguish and other damages, including lost earnings.

The district court bifurcated the action, ordering the parties to focus first on discovery related to possible certification of a plaintiff class.

### THIS MOTION

Plaintiffs' discovery plan, filed June 23, 1999 included a request for a passenger list from Flight 23, with the full name, address and telephone number of each passenger. On July 29, the parties filed a joint request for an order regarding discovery of passenger information. Plaintiff argues that this information is necessary to identify potential class members and to assist in determining whether the class meets such requirements as typicality and numerosity. Defendant responds that producing this information would

invade the privacy of passengers. This motion was referred to a magistrate judge on August 4, 1999.

## ANALYSIS

Pursuant to the Aviation Security Improvement Act of 1990, 14 Code of Federal Regulations Part 243, the Department of Transportation requires that certificated air carriers and large foreign air carriers collect the full names of U.S. citizens traveling on flight segments to or from the United States, along with passport numbers, and solicit a contact name and telephone number for each passenger. This need not be a family member. In the event of an aviation disaster, the contact information is used to locate and reach the contacts for each passenger.

An aviation disaster is defined as:

An occurrence associated with the operation of an aircraft that takes place between the time any passengers have boarded the aircraft with the intention of flight and the time all such persons have disembarked or been removed from the aircraft, and in which any person suffers death or serious injury, and in which the death or injury was caused by a crash, fire, collision, sabotage or accident.

63 FR 8258, 8281, 14 C.F.R. § 243.3—Definitions.

The purpose of collecting the passenger list and contact list is to enable the State Department and the National Transportation Safety Board ("NTSB") to reach family members of passengers who have been seriously injured or killed in a plane crash. The presumption is that the passengers are incapacitated and cannot contact their families themselves. This regulation resulted from such catastrophes as TWA Flight 103, which exploded over Lockerbie, Scotland with total loss of life; Korean Flight 007, which was shot down by Russian jets over disputed territory, and other disasters where many or all passengers on a flight were killed, but there was significant delay in contacting family members, due to lack of a complete passenger list or contact information. The contact person need not be a family member and the list is to be used by government agencies only in the event of an emergency.

In the case at bar, none of the passengers died in the Tower Air Flight 23 incident and it is questionable whether it was an aviation disaster at all. Plaintiff says there was a fire in the left engine; Defendant says there was no fire. Whether Plaintiff's injuries resulted directly from the alleged fire or solely from the alleged misconduct and insensitivity of Tower Air personnel, is also debatable. Furthermore, there is no specific provision in the regulation for providing the passenger list to anyone but a family member or government agency (See 63 FR 8258, 8260, Sec. 1136—Assistance to Families of Passengers Involved in Aircraft Accidents.)

The passenger list and contact information may not be released, except to the family of a passenger, the State Department, or the NTSB. (See 63 FR 8258, 8274, Transmission of Information After an Aviation Disaster, 14 C.F.R. § 243.9.) Subsection (b) requires that the information be maintained only until all passengers have disembarked from the covered flight segment. Subsection (d) provides that the information shall be used only for notification of family members and contacts following an aviation disaster and not for commercial or marketing purposes. The confidentiality provision is directed at least in part at preventing the airlines or anyone else from using this information for profit.

Despite the confidentiality provisions of the statute, there is adequate justification, within the rules of civil procedure, for producing the list. Rule 26(a)(1)(A), Federal Rules of Civil Procedure, requires, as part of the initial disclosure in every civil case, production of:

The name, and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subject of the information.

Plaintiff wants the passenger list so he can contact them as potential witnesses or plaintiffs and possibly enhance the odds in favor of class certification by proving typicality and numerosity, for example. Plaintiff wishes to investigate whether other passengers had similar experiences to Plaintiff and observed the same actions by Defendant's employees.

This information would tend to show the degree of typicality of Plaintiff as compared with other passengers, which would also be relevant to certification of a plaintiff class.

This Court finds that, given the explicit confidentiality provisions of the regulations which mandate maintenance of a passenger list, there is, in the case at bar, good cause for a protective order under the civil discovery rules. The subject regulations do not offer a specific provision for a protective order within the boundaries of the statute. The Court has looked for guidance to cases involving documents subject to the Privacy Act, such as Government personnel or military records, where similar privacy interests, often of non-parties to the litigation, are at stake. In those cases, courts have determined that the subject documents are shielded, not by a special privilege, but by the same concerns as any confidential documents.

> Federal district court's determination regarding propriety of plaintiff's request for Privacy Act protective order does not turn on privilege analysis, but instead on discovery standards set forth in Federal Rules of Civil Procedure. 5 U.S.C.A. § 552a; Fed. Rules Civ.Proc.Rule 26, 28 U.S.C.A.

*Lohrenz v. Donnelly*, 187 F.R.D. 1, 8 (D.D.C. 1999).

Other government regulations designed to protect the privacy of individuals whose personal information is gathered pursuant to federal statute provide for protective orders when such information is produced in the course of discovery in a civil case. For example, in a case in which a party requested information covered by the Privacy Act, in ordering the information to be provided subject to a protective order, the appellate court most familiar with the Privacy Act, the D.C. Circuit, found:

> The Privacy Act, however, does not create a qualified discovery privilege as that concept is generally understood, and we find no basis in the statute or its legislative history for inferring one. Nor does the Act create any other kind of privilege or bar that requires a party to show actual need as a prerequisite to invoking discovery. Rather, the plain language of the statute permits disclosure "pursuant to the order of a court of competent jurisdiction."

5 U.S.C. § 552a(b)(11) (1982). Neither the statute nor anything in its legislative history specifies the standards for issuance of such a court order. We therefore find no basis for inferring that the statute replaces the usual discovery standards of the FRCP—in particular, Rules 26 and 45(b)— with a different and higher standard.

*Laxalt v. McClatchy*, 809 F.2d 885, 888 (D.C.Cir.1987).

In the case at bar, this Court finds good cause for a protective order in that statute which authorizes the collection of passenger names and other information has an explicit provision that the information be released only to family members and government agencies, and not be used for commercial purposes.

Accordingly, this Court hereby orders the parties to draft a stipulated protective order for the Court's signature, which limits access to the passenger list to counsel, their staffs and the Court, and which permits its use only for purposes of this litigation, and provides that the list shall be returned to Defendants or destroyed upon the conclusion of this litigation.

## CONCLUSION AND ORDER

The Aviation Security Improvement Act of 1990 does not create a special privilege beyond the protections afforded by the rules of civil procedure for a passenger list. Discovery in this case has been bifurcated, and the district court has instructed the parties to focus first on discovery related to certification of a class of plaintiffs. It is essential that Plaintiff contact the other passengers on Flight 23 to ascertain whether their experience was similar to that of Plaintiff, sufficient to satisfy the requirement of typicality, and if enough passengers had similar experiences to satisfy the requirement of numerosity. For these reasons, Defendant should produce the passenger list as part of its initial disclosure. The passenger list is relevant to the possible certification of a plaintiff class, and therefore within the boundaries of Rule 26(a)(1)(A) and the limitations of discovery in the initial phase of this case. In addition, as discussed above, passengers are entitled to a protective order. Accordingly,

IT IS HEREBY ORDERED, that the parties shall draft and submit to this Court,

within ten days of the date of this order, a stipulated protective order. Thereafter, Defendant shall provide to Plaintiff, within thirty days of the date of this order, the name, and, if available, the address and telephone number of each passenger on Tower Air Flight 23, from New York to San Francisco, on January 17, 1999.