**ICG COMMUNICATIONS, INC., Plaintiff,**

v.

**ALLEGIANCE TELECOM, et al., Defendants.**

No. C01–3706 CW(EMC).

United States District Court, N.D. California.

Dec. 23, 2002.

S. Fey Epling, Catherine M. Leon, Drinker, Biddle & Reath, LLP, San Francisco, CA, Matthew Macy, James Rollin Miller, Paul R. Wood, Miller, Wood, Welch, LLC, Denver, CO, for Plaintiff.

Melanie Grant Jones, Tyree P. Jones, Jr., Interactive Law Group, Christopher J. Pirrone, Robert W. Tollen, Seyfarth Shaw, San Francisco, CA, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND IMPOSING A PROTECTIVE ORDER (Docket No. 52)

CHEN, United States Magistrate Judge.

#### Factual Background

Plaintiff ICG, a provider of switched data and voice telecommunications, filed for Chap-

ter 11 protection in November, 2000. As part of its reorganization, ICG determined which of its customers were profitable. To its profitable customers it sent a letter indicating that it would continue serving them. To its unprofitable customers, ICG sent a letter indicating that it would be terminating their services.

ICG alleges that Allegiance Telecom sent ICG's unprofitable customer letter to profitable ICG customers in order to get these customers to switch to Allegiance. ICG also alleges that Allegiance called ICG customers and, claiming to be ICG, left phone messages indicating that ICG would be terminating service in 30 days. ICC's suit includes claims under the Lanham Act for trademark infringement and unfair competition, and state claims for deceptive trade practices.

The present discovery dispute involves Defendant's refusal to answer Plaintiff's Interrogatories 3 and 5, which pertain to customer files. Defendant claimed that it could not answer under 47 U.S.C. § 222 (discussed *infra*), and ICG's offer to impose a protective order was rejected. Interrogatory 3 asks that Allegiance "Identify the 'ICG sales' for the cities, accounts, and lines referenced by Ms. Smith in her July 27, 2001 email to Mr. Parella and others." ICG also moves to compel Allegiance to comply with its related document requests, including:

- No. 1: Produce all documents that you relied upon or referenced in responding to the above Interrogatories.

- No. 2: Produce the "Southwest Region ICG Customers ..." spreadsheet that was attached to Ms. Smith's July 27, 2001 email to Mr. Parella and others.

- No. 3: Produce all documents regarding each "ICG customer" referenced in the July 31, 2001 email from Scott Nicols to Kaete Demro, that switched from ICG to Allegiance.

- No. 4: Produce all documents regarding each "ICG customer" referenced in the July 27, 2001 email from Kathleen Smith to Tony Parella and others.

- No. 5: Produce all documents regarding each "ICG customer" to whom an Allegiance employee sent the aforementioned "May 25, 2001 ICG Letter."

- No. 6: Produce all correspondence, emails, and facsimile transmissions between Allegiance and each ICG customer who received the aforementioned "May 25, 2001 ICG Letter" from an Allegiance employee and or representative.

- No. 7: Produce all notes, entries, and other records including electronic records of any communication between Allegiance and each ICG customer who received the aforementioned "May 25, 2001 ICG Letter" from an Allegiance employee and or representative.

### Analysis

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party" and the court may order discovery of any matter that "appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 29–30, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Moreover, all discovery in federal district court is subject to Rule 1, which directs that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Rule 1; *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D.Cal.2002). At the hearing, Defendant conceded that Plaintiff's discovery requests are relevant. Defendant's sole objection is that the privacy provisions of the Telecommunications Act of 1996, 47 U.S.C. § 153 *et seq.* prohibit the disclosure of the information sought, even in the context of court ordered discovery.

### Section 222(c)

The Telecommunications Act includes a general duty to protect the confidentiality of customer's information, "Every telecommunications carrier has a duty to protect the confidentiality of proprietary information of, and relating to, other telecommunication carriers, equipment manufacturers, and customers, including telecommunication carriers re-

selling telecommunications services provided by a telecommunications carrier." 47 U.S.C. § 222(a). Section 222(c), in pertinent part, specifically protects the confidentiality of customer proprietary network information ("CPNI"):

(1) Privacy requirements for telecommunications carriers

*Except as required by law* or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories.

47 U.S.C. § 222(c) (emphasis added). Section 222 defines CPNI as follows:

(A) information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and

(B) information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier.

47 U.S.C. § 222(h)(1).

As the title of § 222 ("privacy of customer information") and the above quoted language suggest, this provision was principally intended to protect consumer's privacy interests. *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1236 (10th Cir.1999) ("[T]he specific and dominant purpose of § 222 is the protection of customer privacy."); Federal Communications Comm'n, Second Report and Order and Further Notice of Proposed Rulemaking in the *Matter of Implementation of the Telecommunications Act of 1996*, 13 F.C.C.R. 8061 ¶ 1 (1998) ("Congress recognized, however, that the new competitive market forces and technology ushered in by the 1996 Act had the potential to threaten consumer privacy interests. Congress, therefore, enacted section 222 to prevent consumer privacy protections from being inadvertently swept away along with the prior limits on competition.").

Neither party disputes that the information and documents sought by Plaintiff contain CPNI and thus falls within the purview of Section 222(c). The question here is whether the phrase "Except as required by law" in § 222(c)(1) allows this Court to compel Defendant to answer Plaintiff's interrogatories and produce the documents requested. Although there is not precedent directly on point [1], the Court concludes that it does.

The starting point of statutory analysis is the plain meaning of the statute. *Middle Mtn. Land and Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1222 (9th Cir. 2002). Statutory language must ordinarily be accorded its plain and ordinary meaning. *Id.; U.S. v. Middleton*, 231 F.3d 1207, 1210 (9th Cir.2000).

The authority for discovery of the requested information are the Federal Rule of Civil Procedure. These rules constitute "law" as that term is ordinarily understood. In common parlance, "law" includes "a rule or order that is advisable or obligatory to observe." Merriam–Webster's Collegiate Dictionary 659 (10th ed.1993). Black's Law Dictionary, Seventh Edition, p. 889 (1999) similarly defines "law" as "the aggregate of legislation, judicial precedents, and accepted legal princi-

---

1. The only case addressing this issue under § 222(c)(1) is *Parastino v. Conestoga Tel. & Tel. Co.*, 1999 WL 636664 (E.D.Pa.1999). In *Parastino*, the plaintiff, a phone customer, alleged that the defendant wrongfully disclosed his confidential telephone records to third parties without consent. *Id.* at *1–*3. The defendant disclosed the telephone records in response to subpoenas issued in state criminal proceedings against the plaintiff. *Id.* at *1. The plaintiff conceded that a valid subpoena would qualify as an exception under § 222(c)(1). Based on the understanding of the parties and the court on this issue, the court concluded that the subpoena was valid and therefore the exception of § 222(c)(1) applied. Because the issue was conceded by the plaintiff, the court had no occasion to analyze the question whether the exception in § 222(c)(1) applies to a court order such as a subpoena.

ples; the body of authoritative grounds of judicial and administrative action." As Defendant acknowledges, the Rules of Civil Procedure "have the force and effect of a federal statute ..." *Oklahoma Radio Associates v. Federal Deposit Insurance Corp.,* 969 F.2d 940, 942 (10th Cir.1992). Congressional authorization of the Federal Rule of Civil Procedure dates back to 1934 with the codification of the Rules Enabling Act, 28 U.S.C. § 2072. *Sibbach v. Wilson & Co.,* 312 U.S. 1, 9–10, 61 S.Ct. 422, 85 L.Ed. 479 (1941) (noting that Congress may delegate to the federal courts the authority to make rules not inconsistent with the statutes or the Constitution.).[2] Thus, each Federal Rule of Civil Procedure in effect has the imprimatur of Congress. *In re Halkin,* 598 F.2d 176, 185 n. 17 (D.C.Cir.1979) (noting that an order pursuant to Rule 26(c) "does bear, to some extent, a congressional imprimatur.").

Thus, Defendant does not seriously dispute that Federal Rule of Civ. P. 26 constitutes a "law" within the meaning of Section 222(c)(1). Rather it argues that a discovery order issued by this Court is not "law" because the "difference between the common law, statutes, regulations, and the Federal Rules, on the one hand, and the order the Court will issue in this dispute, on the other hand, is that the latter exist *before* the dispute is resolved." Defendant's Post–Hearing Memorandum, at 2 (emphasis in original). In other words, Defendant argues, "The Court may not issue an order compelling disclosure based upon the authority of the order the Court will issue to compel disclosure." But Defendant's argument misses the point that any such court order is based upon the explicit authority granted by the Federal Rules

of Civil Procedure, including, inter alia, Rules 26 and 37. It would defy logic to hold that a court order authorized by "law" and issued to enforce a "law" would not itself constitute a "law." "Law" includes "the body of authoritative grounds of judicial and administrative action" (Black's Law Dictionary, supra at p. 889) and perforce the judicial action itself.

The legislative history of Section 222(c) supports the Court's interpretation of the plain meaning of the exception. The Senate version of legislation that embodied Section 222 contained an exception to the prohibition against disclosure of CPNI "in response to a court order or to initiate, render, bill and collect for telecommunications services." H.R. Conf. Rep. 104–458, 104th Cong., 2nd Sess. at 203 (1996). The House version of bill contained no explicit language addressing the issue but stated more generally that "this section shall not prevent the use of CPNI to combat toll fraud or to bill and collect for services requested by the customers." *Id.* at 204. The Conference Committee adopted the Senate provisions with modifications. *Id.* at 205. The final wording in the Conference Committee version containing the "except as provided by law" replaced the Senate's "court order" language. Nothing in the legislative history suggests that the Conference Committee version was intended to narrow the Senate version of the language. The natural reading of the change in language was that it was intended to broaden rather than narrow the exception. The language is broader than the Senate's language since it is not limited to court orders but is broad enough to apply literally to other laws such as regulations and administrative rules and orders.[3]

---

2. *See also* Karen Nelson Moore, *The Supreme Court's Role in Interpreting the Federal Rules of Civil Procedure,* 44 Hastings L.J. 1039, 1042–61 (1993) (reviewing Congress' decision to delegate rulemaking powers to the Court and summarizing instances in which Congress has seen fit to delay implementation of or disapprove particular rules, as well as enact amendments to the Rules of Civil Procedure); Carole E. Goldberg, *The Influence of Procedural Rules on Federal Jurisdiction,* 28 Stan. L.Rev. 395, 437–441 (1976) (concluding that Congress' delegation under the Rules Enabling Act is constitutional because the Act provides standards for delegation and an appropriate delegatee, and Congress retains veto power).

3. Other statutes, such as the Privacy Act, 5 U.S.C. § 552a, contain express language excepting court orders. *See Laxalt v. McClatchy,* 809 F.2d 885 (D.C.Cir.1987) (court ordered production of FBI files). Cases such as *Laxalt* construing those provision are not dispositive here given the express reference to court orders therein. On the other hand, to the extent the language in Section 222(c)(1) is deemed broader than that in e.g. the Privacy Act, it would follow *a fortiorari* from *Laxalt* that the Court can compel disclosure here.

Defendant argues that compelling discovery in the instant case would abridge the Telecommunications Act in violation of the Rules Enabling Act, which provides that the Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b); *see also Brennan v. Silvergate Dist. Lodge No. 50, Intern. Ass'n of Machinists and Aerospace Workers, AFL–CIO*, 503 F.2d 800, 804 (9th Cir.1974) ("The Federal Rules of Civil Procedure do not 'abridge, enlarge or modify any substantive right,' nor do they enlarge the jurisdiction of the federal courts.") (citations omitted). Defendant's Post–Hearing Memorandum, at 2. But this argument simply begs the question. If, as this Court concludes, the exception to confidentiality in Section 222(c)(1) applies to court sanctioned discovery, an order to compel would not abridge the statute. It would be consistent with and authorized by the statute.

Finally, the Court's interpretation of Section 222(c)(1) is consistent with the fundamental policies which underpin our judicial process. *Cf. Vinson v. Superior Court*, 43 Cal.3d 833, 842, 239 Cal.Rptr. 292, 740 P.2d 404 (1987) ("But even though plaintiff retains certain unwaived privacy rights, these rights are not necessarily absolute. On occasion her privacy interests may have to give way to her opponent's right to a fair trial. Thus courts must balance the right of civil litigants to discover relevant facts against the privacy interests of persons subject to discovery."). Discovery is a fundamental aspect of civil litigation and is often "essential to [the] fair resolution" of lawsuits. *Id.* at 842, 239 Cal. Rptr. 292, 740 P.2d 404. Accordingly, the courts generally eschew an "absolute privilege for trade secrets and similar confidential information" in favor of a case-by-case approach that balances "privacy against the need for disclosure." *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (citations omitted). Other confidential business information is generally afforded even less protection than trade secrets. *Littlejohn v. BIC Corp.*, 851 F.2d 673, 685 (3rd Cir.1988) ("Further, non-trade secret but confidential business information is not entitled to the same level of protection from disclosure as trade secret information."). Furthermore, Federal R. Civ. Pro. 26 affords the courts the power to balance of privacy and discovery interests by allowing for a protective order when "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." F.R.C.P. Rule 26(c); *see also* Rule 26(c)(7) (courts have discretion to impose a protective order to prevent disclosure of confidential commercial information). Thus, although congress may have the power to impose a ban on discovery for certain matters, there should be a clear expression of congressional intent before relevant information essential to the fair resolution of a lawsuit will be deemed absolutely and categorically exempt from discovery and not subject to the powers of the court under Rule 26.[4]

### Conclusion

In conclusion, the Court finds that under Section 222(c)(1) of the Telecommunications Act, this Court may order the discovery sought plaintiff produced. In light of the privacy concerns, however, there is good cause for a protective order limiting the production for attorney eyes only. *Cf. Wallman v. Tower Air*, 189 F.R.D. 566, 569 (N.D.Cal. 1999) ("[G]iven the explicit confidentiality provisions of the regulations which mandate maintenance of a passenger list, there is, in the case at bar, good cause for a protective order under the civil discovery rules.").[5]

---

4. *Wallman v. Tower Air, Inc.*, 189 F.R.D. 566 (N.D.Cal.1999) is illustrative. In a personal injury suit, plaintiffs sought to obtain a passenger list for the flight to aid in class certification. *Id.* at 567–568. The court found that the governing regulations only allowed the passenger list to be released to passenger's family members, the State Department, or the National Transportation Safety Board. *Id.* at 568. The court held, "Despite the confidentiality provisions of the statute, there is adequate justification, within the rules of civil procedure, for producing the list."

*Id.* at 568 (citing F.R.C.P. 26(a)(1)(A)). In particular, the court found that plaintiff's reasons for wanting the passenger list were valid, as it would help prove typicality and numerosity for class certification purposes. *Id.* at 569. Significantly, the court compelled production of the information sought even though there was not explicit exception from confidentiality.

5. At the hearing the Court raised, *sua sponte*, the question of whether the Court could compel the discovery based upon § 222(d) of the Telecom-

For the reasons stated above, Plaintiff's motion to compel is **GRANTED** under Rule 26(b)(1). However, Defendant's responses to Plaintiff interrogatories and document requests pursuant to this order shall also be covered by a protective order under Rule 26(c), and shall be designated "attorneys' eyes only." The parties shall stipulate to a form of protective order.

IT IS SO ORDERED.

munications Act which permits disclosure of CPNI data "to protect the rights or property of the carrier, or to protect users of those [telecommunications] services and other carriers from fraudulent, abusive, or unlawful use of, or subscription to, such services." § 222(d)(2). Upon supplemental briefing by the parties, its appears that Section 222(d)(2) was not directed at disclosure in litigation but to allow telecommunica- tions companies "to use CPNI in limited fashion for credit evaluation to protect themselves from fraudulent operators who subscribe to telecommunications services, run up large bills, and then change carriers without payment." H.R. Conf. Rep. No. 458 at p. 205. In any event, since the Court concludes that Section 222(c)(1) authorizes an order compelling discovery, it need not interpret Section 222(d).